IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DOMINIQUE BUCKERIDGE | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: |
| | ) 3:20-cv-856 |
| TUSKEGEE UNIVERSITY; | ) |
| THOMPSON FACILITIES | ) |
| SERVICES, LLC, | ) |
| | ) |
| Defendants. | ) |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1367, 1441, and 1446, named Defendant Thompson Facilities Services, LLC ("Thompson"), who is a named defendant in the above-captioned civil action (other than certain fictitiously named parties whose citizenship is to be disregarded for purposes of removal under 28 U.S.C §1441(b)(1)), hereby removes this case from the Circuit Court of Macon County, Alabama, where it is now pending as Case Number CV-2020-900147, to the United States District Court for the Middle District of Alabama, Eastern Division. In support of this Notice of Removal, Defendant asserts and avers as follows:

### FACTUAL ALLEGATIONS SUPPORTING REMOVAL

1. Plaintiff Dominique Buckeridge ("Buckeridge") commenced this action against Thompson and Defendant Tuskegee University ("Tuskegee") and

certain fictitious parties on October 20, 2020, by electronically filing a Civil Cover Sheet, Complaint, Request for Certified Mail, and Summonses in the Circuit Court of Macon County, Alabama, true and correct copies of which are collectively attached to this Notice of Removal as part of **Exhibit A.**

2. As alleged in the Complaint, Plaintiff Buckeridge is a resident citizen of Georgia. *See* Ex. A. Compl. at ¶¶ 1. Thus, for diversity purposes, Plaintiff Buckeridge is a citizen of the State of Georgia.

3. While Tuskegee has not yet been served in this matter but consistent with Plaintiff's allegations in the Complaint, *see id* at ¶ 2, Defendant Tuskegee is a resident citizen of Tuskegee, Alabama. Thus, for diversity purposes, Defendant Tuskegee is a citizen of the State of Alabama.

4. Correctly alleged to be a foreign limited liability corporation, *see id* at ¶ 3, Defendant Thompson is considered for diversity purposes to be a citizen of Virginia, Delaware, and North Carolina. *See* 28 U.S.C. § 1332(c)(1).

5. Plaintiff's Complaint alleges that Defendants negligently caused and fraudulently concealed the presence of mold in Plaintiff's college dorm which resulted in Plaintiff being "made to inhale toxic mold for long periods of time." *See* Ex. A. Compl. at ¶¶ 69. Plaintiff claims "[t]he mold inhalation resulted in Plaintiff having to receive medical attention" and treatment for which she received a medical diagnosis of mold exposure. *Id.* at ¶ 71 & ¶ 14. The alleged exposure caused Plaintiff

to suffer from migraine headaches, a stuffy nose, coughing, mucous, and a sore throat. *See* Ex. A. Compl. at ¶¶ 8-15. Resultantly, Plaintiff alleges she "incurred medical expenses and emotional distress and mental anguish." *Id.* at 52.

6. Specifically, Plaintiff alleges that Thompson entered into a contract with Tuskegee to provide certain facility services which excluded the scope of services of the removal or mitigation of mold or mildew. *See id.* at Compl. ¶¶ 16, 27.

7. Plaintiff alleges that despite this language, Thompson waived its terms by its conduct in removing and mitigating mold throughout Tuskegee buildings. *See id.* at Compl. ¶ 27.

8. Plaintiff alleges that the Defendants committed fraud by permitting Plaintiff to inhabit her college dorm room despite the alleged presence of mold and allegedly failing to disclose this information. *See id.* at Compl. ¶¶ 35, 36 & 42, Count 1.

9. Plaintiff alleges that the Defendants committed suppression by concealing the alleged presence of mold and by allegedly failing to disclose this information to the Plaintiff. *See id.* at Compl. ¶¶ 44, 48, Count 2.

10. Plaintiff alleges that Plaintiff is a third party beneficiary of the contract between Thompson and Tuskegee and that Thompson breached the contract by failing to perform certain contract provisions. *See id.* at Compl. ¶¶ 55-61, Count 3.

11237321v.1

11. Plaintiff additionally alleged that Tuskegee committed the tort of outrage by allowing Plaintiff to pay for a door room that was allegedly inhabitable and not suitable for residing. *See id.* at Compl. ¶¶ 65-67, Count 4.

12. Finally, Plaintiff alleges that the Defendants were negligent because the Defendants had a duty not to expose Plaintiff to an unreasonable risk of harm and that they breached that duty by allegedly allowing Plaintiff to inhale toxic mold. *See id.* at Compl. ¶¶ 69-71, Count 5.

13. Based on Defendants' alleged respective wrongful conduct, Plaintiff demands an award of unspecified compensatory damages against Defendants with respect to each claim asserted in the Complaint. *See id.* at *ad damnum* clauses to Counts 1-5. Plaintiff further seeks an award of unspecified punitive damages from Defendants as punishment for their alleged wrongful conduct. *Id.* at *ad damnum* clauses to Counts 1-5.

14. The present case is one is a series brought against Tuskegee and Thompson alleging harmful mold exposure.

15. In one of those cases, with substantially similar allegations as those alleged in the case *sub judice*, the plaintiff, ("Nelson"), was allegedly exposed to mold and suffered similar physical injuries, such as headaches and respiratory issues, as those alleged by Plaintiff Buckeridge. Notably, the plaintiff counsel in the *Nelson* case is the same attorney who is representing Plaintiff Buckeridge.

16. Recently, on September 8, 2020, Plaintiff counsel sent a demand letter to Tuskegee and Thompson with a formal settlement demand of $3,000,000 to recover for the alleged breaches, negligence, fraud and suppression that are also alleged in this case. Ex. B, $3Million Demand.[1]

## FEDERAL SUBJECT MATTER JURISDICTION EXISTS

17. Pursuant to 28 U.S.C. § 1332, federal subject matter jurisdiction exists because all parties properly joined are completely diverse from every named Plaintiff, and the amount in controversy, exclusive of interest and costs, is greater than $75,000. 28 U.S.C. § 1332(a)(1); *see also Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). "[T]he party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010) (quoting *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006)).

### A.  Complete Diversity Exists Between the Parties.

18. As demonstrated above, for diversity purposes, Plaintiff Buckeridge is

---

[1] Notably, the Defendants in the *Nelson* case attempted removal but the case was remanded after Plaintiff counsel argued Thompson failed to establish the amount in controversy by a preponderance of the evidence. *Nelson v. Tuskegee*, 2018 LEXIS 59682 (M.D. Ala. April 8, 2018). The recent $3 million demand and Plaintiff counsel's detailed analysis of the value of the claim set out in Ex. C undoubtedly demonstrates now that the amount in controversy in that case and the present case are above $75,000. At the time the *Nelson* removal was filed, Plaintiff counsel had been tactfully vague preventing the Defendants from presenting the necessary evidence to establish the amount in controversy.

a citizen of Georgia, where she maintains her permanent residence; Defendant Tuskegee is a citizen of Alabama, where it maintains its permanent residence.

19. Defendant Thompson, as shown below, is considered a citizen of Delaware, Virginia, and North Carolina. Thus, complete diversity exists because no Defendants are Georgia citizens.[2]

20. A limited liability company is considered a citizen of every state where any member of the entity is a citizen. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1220 (11th Cir. 2017). Thompson is a Delaware LLC. Thompson's members are Thompson Hospitality Corporation ("Thompson Hospitality") and Compass Group USA, Inc. ("Compass Group").

21. Thompson Hospitality was incorporated in Delaware and its principal place of business is in Virginia. Compass Group was incorporated in Delaware and its principal place of business is in North Carolina. Therefore for diversity purposes, Thompson is a citizen of Delaware, North Carolina, and Virginia.

**B.   This Notice of Removal is Timely.**

22. Because Defendant Thompson files this notice of removal within thirty days of the Complaint being filed on October 20 2020, and before Tuskegee has

---

[2] Although the Complaint pleads claims against fictitious parties, those entities are disregarded for purposes of determining removal jurisdiction. *See* 28 U.S.C. § 1441(a).

6

been served, Defendant's notice of removal is timely pursuant to 28 U.S.C. § 1446(b).

23. "Except as otherwise *expressly provided* by Act of Congress, *any civil action brought in a State court* of which the district courts of the United States have *original jurisdiction, may be removed by the defendant* or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a) (emphasis added).

24. Actions involving parties from different states and involving an amount in controversy exceeding $75,000.00 fall under a federal court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, and such cases are removable to federal court. Therefore, Congress' expression of its intent is that in cases where complete diversity, and the amount in controversy exceeds $75,000, the case is removable to federal court unless "otherwise expressly provided."

25. 28 U.S.C § 1441(b)(2) provides an exception:

> A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

26. In interpreting this statutory language, the vast majority of courts have found no ambiguity and have honored its plain text, holding that the rule does not preclude removal of an action where a forum defendant has been "joined" but not "served." *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 707 (2d Cir. 2019);

7

*Encompass Ins. Co. v. Stone Mansion Rest., Inc.,* 902 F.3d 147, 154 (3d Cir. 2018); *McCall v. Scott,* 239 F.3d 808, 813 n.2 (6th Cir. 2001) ("Where there is complete diversity of citizenship…inclusion of an unserved resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b)"); *Francis v. Great West Cas. Co.,* 2918 WL 999679, at *2 (M.D. Ga. Feb. 21, 2018) ("Although the Eleventh Circuit has not addressed this issue, other courts have found, where there is complete diversity, that removal by a nonresident defendant prior to service of a forum defendant is not contrary to congressional intent" (collecting cases); *Pathmanathan v. Jackson Nat. Life Ins. Co.,* 2015 WL 4605757, at *3-5 (M.D. Ala. July 30, 2015); *Goodwin v. Reynolds*, 2012 WL 4732215, at * 3 (N.D. Ala. Sept. 28, 2012) ("It has been noted…that the 'majority' of courts follow the plain language of 1441(b) and allow non-forum defendants to remove where a forum defendant remains unserved"), *affirmed on other grounds*, 757 F.3d 1216 (11th Cir. 2014); *Lemley v. Midwest Automation, Inc.,* 2009 WL 12111382, at *1, n.2 (S.D. Ala. May 1, 2009) ("The court declines plaintiff's invitation to assume the role of Congress and modify the statute.")

27. In *Papa Air, LLC,* the court was recently presented with the "narrow issue of whether 'snap removal' is precluded by the resident defendant rule when a non-resident defendant removes a case from state court on the basis of diversity jurisdiction prior to any of the defendants being 'properly joined and served.'" *Papa*

*Air, LLC, v. Cal-Mid Props. L.P.*, 2020 WL 98687 at * 7 (N.D. Ala. June 5, 2020).

28. Judge Proctor concluded that the "removal and abiding by the plain language of section 1441(b)(2)…does not lead to an absurd result 'so gross as to shock the general moral or common sense." *Id.* at *13.

29. His conclusion was additionally supported by another unpublished:

> "Eleventh Circuit decision that held service of the complaint is not required prior to removal. *Id.* at 13-14 (*see Whitehurst v. Walmart*, 306 F. App'x 446, 448 (11th Cir. 2008) (per curiam) ("nothing in the removal statute, or any other legal provision requires that a defendant be served with the complaint before filing a notice of removal)."

*Id.* at *13-14.

30. Judge Proctor held that the language of section 1441(b)(2) is "not applicable until a home-state defendant has been served in accordance with state law. Prior to that, a state court lawsuit is removable under Section 1441(a) so long as a federal district court can assume subject matter jurisdiction over the action." *Id.* at 14-15.

## C. The Amount in Controversy Exceeds the Jurisdictional Requirement, Even in the Absence of a Specific Demand.

31. When a plaintiff "'has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement.'" *Pretka*, 608 F.3d at 752 (quoting *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001)).

9

32. Removal of a complaint that "'does not claim a specific amount of damages" will be upheld as "proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement.'" *Pretka*, 608 F.3d at 754 (quoting *Williams*, 269 F.3d at 1319).

33. The Eleventh Circuit importantly recognizes that when engaging in jurisdictional analysis, it is proper for district courts "to make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case is removable." *Bush v. Winn Dixie*, 132 F. Supp. 3d 1317, 1319 (N.D. Ala. 2015) (quoting *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010)). "Put simply, a district court need not 'suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount.'" *Id.* (quoting *Roe*, 613 F.3d at 1062). Rather, district courts may rely on "their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Id.* (quoting *Roe*, 613 F.3d at 1062).

34. Where "the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Williams*, 269 F.3d at 1319; *see also McCollough Enters.*, No. 09–0573–WS–B, 2009 WL 3615044, at *3 (S.D. Ala. Oct. 29, 2009) ("'A removing defendant can discharge

this burden by presenting sufficient evidence that a verdict rendered in favor of the plaintiff would exceed $75,000.'") (quoting *Holman v. Montage Group*, 79 F. Supp. 2d 1328, 1330 (S.D. Ala. 1999)).

35. For complaints removed under the first paragraph of former § 1446(b) (i.e., removals within thirty days of initial service), *Pretka* held there is "no[] limit [on] the types of evidence that may be used to satisfy the preponderance of the evidence standard." *Pretka*, 608 F.3d at 755, 768. A removing defendant may include "factual allegations establishing jurisdiction" in the notice of removal if it "can support them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations." *Pretka*, 608 F.3d at 754.

36. In determining the amount in controversy, each category of damages claimed in a complaint, including "punitive damages[,] must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered." *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987).

37. Although the Complaint is silent as to the amount in controversy, the Plaintiff counsel's recent detailed analysis of the amount a jury would award against Thompson and Tuskegee for its alleged bad acts and the accompanying demand from a nearly identical case demonstrate the amount in controversy exceeds $75,000.

38. As noted above, Plaintiff's counsel's sent a $3,000,000 demand letter to Thompson in a similar case, involving Thompson, Tuskegee, and similar counts, where a plaintiff allegedly suffered exposure to mold and allegedly suffered injuries.

39. In alleging she is seeking to recover all damages available against the Defendants based on allegations of negligence and other wrongs on the Defendants' parts, *see* Ex. A, Compl. Counts 1-5, Plaintiff's Complaint implicates not only various categories of compensatory damages, both economic and non-economic, but also punitive damages under Alabama law. This is further confirmed by the demand letter raising the *Nelson* plaintiff's "perfect storm" for a very high jury verdict because this case is pending in Macon County which has been describe as the "#1 'Judicial Hellhole' in the country." Ex. B at 7.

40. Plaintiff in this case, and in the *Nelson* case, seeks to recover for the tort of outrage which Alabama has recognized as conduct by "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *American Road Serv. Co. v. Inmon*, 394 So. 2d 361, 366 (Ala. 1980.) This tort requires that "[t]he emotional distress thereunder must be so severe that no reasonable person could be expected to endure it.... By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *American Road Serv. Co. v. Inmon*, 394 So. 2d 361, 366, *citing*

11237321v.1

Comment (d), *Restatement, supra* at 72 and Prosser, *Law of Torts* (4th ed.) at 56-60. By alleging this tort, Plaintiff likewise alleges she has experienced an emotional distress so severe, that a reasonable person could not endure it.

41. Plaintiff also seeks punitive damages. Because the purpose of punitive damages is to punish, punitive damages by their very nature are intended to be large and often requested in terms of multiples of underlying compensatory damages. Plaintiff's damages could easily exceed $75,000 when taking into account her uncapped emotional distress and mental anguish and her incurred medical expenses, even if minimal.

42. Lest there be any doubt, the recent $3,000,000 demand of Plaintiff's counsel, which includes a detailed discussion of why this demand will be met, confirms the amount in controversy is met. "While a settlement offer, by itself, may not be determinative" of the amount in controversy, Alabama federal district courts commonly find that "settlement offers that provide specific information . . . to support claim for damages suggest the plaintiff is offering a reasonable assessment of the value of [the plaintiff's] claim and are entitled to more weight." *Jackson v. Select Portfolio Serv., Inc.*, 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009) (internal citations and quotations omitted).

43. Moreover, Plaintiff's omission of any specific amount of damages from her *ad damnum* clause is significant to the judicial experience and common sense

assessment. In *Bush, supra*, Judge Acker wrote that the Eleventh Circuit:

> has finally acknowledged the self-evident, namely, that a plaintiff . . . who claims to have sustained a very substantial personal injury at the hands of a defendant and who charges that defendant with wantonness and who seeks to recover for pain, suffering, and mental anguish, and seeks punitive damages, is realistically hoping to recover more than $75,000. . . . This new opening of the federal courts of Alabama to non-resident defendants has taken away the artificial and unfair obstacle to removal erected by Alabama plaintiffs, namely, the expedient of leaving out an *ad damnum* clause.

*Bush*, 132 F. Supp. 3d at 1318-19.

44. Here, Plaintiff should not be allowed to defeat the amount in controversy requirement of federal jurisdiction simply through tactical vagueness. Indeed, *Bush* explains that:

> [I]t is impossible for this court to believe that in today's world . . . a sophisticated business entity [defendant] believed that the amount being sought by [the plaintiff] was less than $75,000 or was so speculative that clarification was needed. Most Alabama defendants and federal judges, including this one, are not guessing or speculating when they recognize the obvious from the complaint itself, based on their experience, intelligence, and common sense. *Id.* at 1318.

In the words of Judge Acker, "The complaint itself is the wake-up call. The defendant cannot snooze through it." *Id.*

45. As additional support, *Bush* discussed *Geodesic Consulting, LLC v. BBVA USA Bancshares, Inc.*, No. 2:15-cv-1225-WMA, 2015 WL 4985474 (N.D. Ala. Aug. 20, 2015), where the defendant "succeeded in getting into federal court" even though the complaint was "was enigmatic with respect to damages in that it

14

lacked any quantification of damages," because that defendant "did not snooze." *Id.* at 1321; *see also Green v. Wal-Mart Stores East, L.P.*, No. 2:14–CV–01684–WMA, 2014 WL 6792043, at *1 (N.D. Ala. Dec. 2, 2014) (where the complaint in a slip-and-fall case sought compensatory damages (including mental anguish) and punitive damages based on claims of negligence and wantonness, without a disclaimer of damages beyond $74,999, district court finding it "apparent that the amount in controversy in this case exceeds the sum of $75,000").

46. As previously mentioned, Thompson attempted to remove the *Nelson* case but it was eventually remanded due to a lack of establishing the amount in controversy by a preponderance of the evidence.

47. Now because of intervening events and developments it is beyond any reasonable debate that the amount in controversy is above $75,000. In *Nelson*, Plaintiff's counsel argued during removal that the amount in controversy could not be meet but then made a $3,000,000 demand on Thompson.

48. Ultimately, based on the demand of a similarly situated plaintiff and the evaluation of this case, it is undeniable that the Plaintiff sees this case as worth seven figures.

**D.    This Court has Jurisdiction Over All Claims in This Matter.**

49. Accordingly, this case is removable pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and the amount in controversy and the above discussion

15

on 1441.

## ALL OTHER REMOVAL REQUIREMENTS ARE SATISFIED

50. In accordance with 28 U.S.C. § 1446(a), Defendants have attached as part of **Exhibit A** true and correct copies of all process, pleadings, and orders filed with the state court and served upon it as of the date of this removal.

51. Attached hereto as **Exhibit C** is a copy of the Notice of Filing this Notice of Removal being filed with the Macon County, Alabama circuit clerk.

Dated:  October 22, 2020.

*Rebecca Young*
REBECCA A. YOUNG (asb-9967-c49c)

**OF COUNSEL:**
WILSON ELSER MOSKOWITZ
 EDELMAN & DICKER, LLP
1500 Urban Center Drive Suite 450
Vestavia Hills, AL 35242
(205)709-8990 Main
(205)709-8979 Facsimile
rebecca.young@wilsonelser.com

## CERTIFICATE OF SERVICE

I certify that on this the 22nd day of October, 2020, the foregoing has been served via hand delivery to the Clerk of Court.

11237321v.1