Case 3:20-cv-00856-JTA   Document 1-1   Filed 10/22/20   Page 1 of 9

ELECTRONICALLY FILED
10/20/2020 3:38 PM
46-CV-2020-900147.00
CIRCUIT COURT OF
MACON COUNTY, ALABAMA
DAVID LOVE, JR., CLERK

## IN THE CIRCUIT COURT MACON COUNTY, ALABAMA

| | |
|---|---|
| DOMINIQUE BUCKERIDGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: |
| ) | |
| TUSKEGEE UNIVERSITY, ) | |
| THOMPSON FACILITIES SERVICES, ) | |
| LLC, DEFENDANTS "A," "B," and "C," ) | |
| whether singular or plural, those persons, ) | |
| corporations, firms, or other entities ) | |
| whose wrongful conduct caused the ) | |
| injuries and damages to Plaintiff; and ) | |
| FICTITIOUS DEFENDANTS "D," ) | |
| "E," and "F," whether singular or ) | |
| plural being or those persons, ) | |
| corporations, firms, or other ) | |
| entities, which is the successor in interest ) | |
| of any of the persons, corporations, firms, ) | |
| or other entities described above; all of ) | |
| whose true and correct names are ) | |
| unknown to the Plaintiff at this time, ) | |
| but will be added by amendment when ) | |
| ascertained. ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

### STATEMENT OF JURISDICTION

This is a cause of action based on negligence and wantonness. The amount in controversy exceeds the jurisdictional requirement of this Circuit Court as may be assessed by a jury.

### STATEMENT OF PARTIES

1. Plaintiff Dominique Buckeridge is an individual over the age of 19 years and is a resident of Georgia. At all relevant times, Plaintiff was a student at Tuskegee University.

2. Defendant Tuskegee University (hereinafter referred to as Tuskegee) is a private institution of higher learning located in Tuskegee, Alabama in Macon County.

3. Defendant Thompson Facilities Services, LLC (hereinafter referred to as TFS) is a Virginia Company, doing business in Macon County, Alabama by agent.

4. Fictitious Defendants A, B, and C are those unknown persons, firms, partnerships, corporations or other entities, who participated or assisted in the wrongful acts alleged in this Complaint and whose true names and legal identities are otherwise unknown at this time, but will be added by amendment when ascertained.

5. Fictitious Defendants D, E, and F, whether singular or plural being or those persons, corporations, firms, or other entities which is the successor interest of any of the persons, corporations, firms, or other entities who participated or assisted in the wrongful acts alleged in this Complaint and whose true names and legal identities are otherwise unknown at this time, but will be added by amendment when ascertained.

## STATEMENT OF THE FACTS

6. Plaintiff Dominique Buckeridge was enrolled as a student at Defendant Tuskegee in the fall Semester of August 2018.

7. Plaintiff Buckeridge transferred from the University of Charleston to Defendant Tuskegee as a result of a tennis scholarship. At the time of her transfer she was a second year college student.

8. Upon moving into Younge Hall room 318, in September Plaintiff began experiencing migraines, a stuffy nose and sore throat.

9. Plaintiff thought these symptoms were the result of allergies and went to the clinic on campus twice where she received some medication. However, despite taking the medication, her symptoms persisted.

10. In October, Plaintiff went home and was seen by her primary care doctor and was diagnosed with and treated for continued symptoms involving migraine headaches, stuffy nose and sore throat. Upon returning to school her complaints of headaches, coughing and the presence of mucus persisted.

11. In late October, Plaintiff believed she began smelling mold in the bathroom and noted that there was an appearance of mold throughout the bathroom. Plaintiff also, believed there was mold present in her dorm rooms.

12. When Plaintiff went home for Thanksgiving break her symptoms began to dissipate. When she returned to school from this break, the headaches and other symptoms returned.

13. On or about November 27, 2018, Plaintiff went to see a University official and requested to be moved from Younge Hall. Officials offered to move her to another room, however, Plaintiff declined such an offer and wanted to be removed from the building.

14. At some point Plaintiff was tested and received a diagnosis of having been exposed to mold.

15. Plaintiff's father notified Tuskegee University via email on December 3, 2018 and requested that the University assist in addressing this problem because Plaintiff's health condition was not improving and was clearly related to the exposure of mold in her room.

16. On or about November 21, 2012, Defendant TFS entered into a contract with Defendant Tuskegee to provide facility services; housekeeping, grounds maintenance....housing maintenance, plant operations, event set ups, office moves, sanitation. . . .equipment repair and emergency services.

17. Defendant TFS further agreed that these services would extend to all residence halls on the campus of Defendant Tuskegee.

18. Defendant TFS agreed to provide an environment which is aesthetically pleasing, safe and clean.

19. The scope of services in the aforesaid contract included building operations and maintenance, including mechanical and electrical engineering, housing, maintenance environmental, waste management and carpentry and painting.

20. The contract further provided that Defendant TFS reports directly to Defendant Tuskegee's Director of facilities management.

21. Additionally, Defendant TFS agreed to be "responsible for responding to all service requests in a timely manner."

22. Defendant TFS agreed to immediately notify Defendant Tuskegee of any unsafe, unhealth or in the any other way would cause an accident.

23. Defendant TFS agreed "to take all reasonable precautions to protect the safety of employees, students and other persons and to protect property from damage."

24. Defendant TFS agreed "to ensure a safe, attractive, functional and efficient environment."

25. Defendant TFS agreed to immediate respond to "any problem affecting the safety of students."

26. Defendant TFS agreed to "notify appropriate regulatory agency" of all occurrences that deviate from compliance and laws."

27. The contract purports to exclude from the scope of services removal or mitigation of mold or mildew. However, despite this language TFS waived its terms by its conduct in removing and mitigating mold throughout Defendant Tuskegee buildings.

28. Defendant TFS had direct knowledge of all of the mold problems in Younge Hall and took direct action to remove or mitigate the mold problems on multiple occasions.

29. Defendant TFS in some instances restricted access to certain dorm rooms in Younge Hall because of the mold.

30. Defendant TFS in some instances took rooms off line in Younge Hall until it could mitigate or remove the mold from that particular location.

31. Defendant TFS worked hand in hand with Defendant Tuskegee to mitigate and remove mold from Younge Hall.

32. Defendant TFS worked hand in hand with Defendant Tuskegee to conceal the presence of mold throughout Younge Hall. Defendant TFS did not warn or otherwise attempt to keep students safe from old exposure in student dormitory rooms.

33. Plaintiff was eventually moved from Younge Hall to the Kellogg Center. Upon moving into the Kellogg Center, Plaintiff's symptoms subsided.

## COUNT I
## Fraud
## §6-5-101

34. Plaintiff incorporates by reference all the allegations of paragraphs 1-32 of her Complaint as if the same were fully set out herein.

35. Defendants Tuskegee and TFS knew and had direct knowledge at the time of assigning Plaintiff to her room in Younge Hall that it had problems with mold infestation.

36. Both Defendants knew as early as March 2015 that Younge Hall was infested with mold and that there was a likelihood that the room Plaintiff was assigned to also had mold infestation.

37. That such knowledge was specifically known to Defendants when the Plaintiff and other students were permitted to move into and occupy Younge Hall in August 2018.

38. The Defendants by its conduct in permitting Plaintiff and other students to move in misrepresented to Plaintiff and others that Younge Hall was safe to inhabit and that it was free from known environmental health and safety risk.

39. Defendants by omission misrepresented either recklessly with knowledge, or recklessly without knowledge or by mistake, but in either event intended that Plaintiff rely on Defendants representation that the building was without known environmental health risk to Plaintiff and other occupants.

40. Defendant TFS had a specific duty under its contract to warn students and protect students from injury.

41. Defendant knew or should have known of the unabated health risk to students with pre-existing problems and to students being exposed to air borne mold spores.

42. Failing to disclose this information to Plaintiff in 2018 was legal fraud.

WHEREFORE premises considered, Plaintiff demands judgment against the Defendants for compensatory and punitive damages, plus interest and costs, in an amount in excess of the jurisdictional minimum of this Circuit Court, as may be assessed by a jury. The amount in controversy exceeds the jurisdictional minimum of this Circuit Court.

### COUNT II
### Suppression
### §6-5-102

43. Plaintiff incorporates by reference all the allegations of paragraphs 1-42 of her Complaint as if the same were fully set out herein.

44. The Defendants suppressed and concealed the material fact of mold infestation as stated above.

45. Defendants knew for years prior to August 2018 that Younge Hall had an unabated mold infestation problem.

46. Defendants were under an obligation to warn Plaintiff and other students of the health risk involved with mold exposure.

47. Defendants knowing of this danger never warned the Plaintiff nor her parents or any other student or parent of the environmental health risk related to mold exposure over a period of time.

48. Defendants had a duty to disclose, because of their superior knowledge and position, that Defendants had not and did not intend on performing a health risk assessment by experts to determine the risk associated with long term exposure to mold to its students and Plaintiff.

49. This total lack and disregard for student safety was not disclosed to Plaintiff nor parents.

50. Plaintiff relied on and trusted Defendants to provide her any information that would affect her well-being while an occupant in Younge Hall.

51. Defendants had:
   (a) A duty to disclose to Plaintiff prior to her moving into Younge Hall in August 2018 that Younge Hall had an unabated mold infestation problem;
   (b) That Defendants had not done a risk assessment nor intended to take any action to abate or fix the problem;
   (c) The Defendants concealed or failed to disclose these material facts to Plaintiff at any time prior to her moving into Younge Hall or during her stay in Younge Hall; and
   (d) The concealment or failure to disclose these facts induced Plaintiff to move into Younge Hall and prevented Plaintiff from assessing the health risk associated with unabated mold growth occurring in Younge Hall.

52. As a result of her reliance on Defendants, Plaintiff suffered as set forth above, incurred medical expenses, and emotional distress and mental anguish.

53. Plaintiff demands compensatory and punitive damages for this outlandish fraudulent conduct.

WHEREFORE premises considered, Plaintiff demands judgment against the Defendants for compensatory and punitive damages, plus interest and costs, in an amount in excess of the

jurisdictional minimum of this Circuit Court, as may be assessed by a jury. The amount in controversy exceeds the jurisdictional minimum of this Circuit Court.

## COUNT III
### Breach of Contract Against Thompson Facilities Services – Plaintiff was a Third Party Beneficiary

54. Plaintiff incorporates by reference all the allegations of paragraphs 1-53 as if fully set forth herein.

55. Plaintiff is a third party beneficiary of the contract (hereinafter referred to as Contract) between Defendants TFS and Tuskegee.

56. Section 6, paragraph (a)(ii) of the contract mandated that TFS "shall be responsible to responding to all service request" from Younge Hall.

57. Defendant TFS further agreed on (b)(ii) it would immediately notify Defendant Tuskegee upon notice of any unsafe or unhealthy conditions and that it would "take all reasonable precautions to protect the safety....of students."

58. Defendant TFS also agreed that it would immediately on the same day, fix any maintenance problem effecting the safety of Defendant Tuskegee students including water leaks.

59. Defendant TFS also agreed to maintain air quality with hazardous material waste disposed.

60. Defendant TFS also agreed to notify all regulatory agencies of occurrences "that deviate from compliance guidelines and laws."

61. Defendant TFS was in breach of its contract with Defendant Tuskegee when it failed each of these contract provisions listed herein above.

62. That Plaintiff was a third-party beneficiary to the contract between Defendants Tuskegee University and TFS and that the contract provisions were made for the benefit of Plaintiff as a student at Defendant Tuskegee.

63. As a result of this breach, Plaintiff suffered as set forth above.

WHEREFORE premises considered, Plaintiff demands judgment against the Defendants for compensatory and punitive damages, plus interest and costs, in an amount in excess of the jurisdictional minimum of this Circuit Court, as may be assessed by a jury. The amount in controversy exceeds the jurisdictional minimum of this Circuit Court.

## COUNT IV
## Tort of Outrage Against Tuskegee University

64. Plaintiff incorporates by reference all the allegations of paragraph 1-64 as if fully set forth herein.

65. Plaintiff contracted with Defendants for a dormitory room on the campus of Defendant Tuskegee.

66. As a material consideration Plaintiff paid Defendants money for said room that would be habitable and free from unreasonable risk of harm.

67. Defendants breached said contract by not providing Plaintiff a room on the campus of Defendant Tuskegee that was habitable and suitable for residing in.

WHEREFORE premises considered, Plaintiff demands judgment against the Defendants for compensatory and punitive damages, plus interest and costs, in an amount in excess of the jurisdictional minimum of this Circuit Court, as may be assessed by a jury. The amount in controversy exceeds the jurisdictional minimum of this Circuit Court.

## COUNT V
## Negligence

68. Plaintiff incorporates by reference all the allegations of paragraphs 1-67 as if fully set forth herein.

69. Defendants had a duty not to expose Plaintiff to unreasonable risk of harm Defendants breached this duty by placing Plaintiff in a dormitory and dormitory room that Defendants knew or should have known was contaminated with mold. As a result of the breach of this duty Plaintiff was made to inhale toxic mold for long periods of time.

70. Defendants had a duty to provide safe housing to Plaintiff and breached this duty as set forth in the preceding paragraph.

71. The mold inhalation resulted in Plaintiff having to receive medical attention and treatment and suffer injuries and damages as stated above.

72. Defendants are jointly and severably liable for the injuries to the Plaintiff.

WHEREFORE premises considered, Plaintiff demands judgment against the Defendants for compensatory and punitive damages, plus interest and costs, in an amount in excess of the jurisdictional minimum of this Circuit Court, as may be assessed by a jury. The amount in controversy exceeds the jurisdictional minimum of this Circuit Court.

Respectfully Submitted:

/s/ Tiffany Johnson Cole

TIFFANY JOHNSON COLE (JOH173)
ROBERT SIMMS THOMPSON (THO039)
Attorney for Plaintiff

**OF COUNSEL**
**Law Offices of Robert Simms Thompson, PC**
P.O. Box 830780
Tuskegee, Alabama 36083
334.727.6463
334.727.5746 (Facsimile)

**PLAINTIFF DEMANDS TRIAL STRUCK BY JURY**